CARLTON, J.,
for the Court:
¶ 1. Todd Wing and Tammy Kinney appeal the Lafayette County Chancery Court’s order dismissing their case with prejudice for lack of prosecution based on Rule 41(b) of the Mississippi Rules of Civil Procedure. Finding no abuse of discretion, we affirm the chancery court’s dismissal of this case.
FACTS
¶2. This appeal involves a revocable trust established in 1996 by Loleta B. Wing. Originally, Loleta was the settlor, primary beneficiary, and trustee of the trust, and her husband, William R. Wing, served as the successor trustee. In 2003, after the death of William, the trust agreement was amended to add Jimmy Wing, Loleta’s only living son, as a co-trustee. During this same time, Loleta executed a power of attorney to Jimmy.
¶ 3. In early 2005, Todd and Tammy,[1] *711 and some others,[2] filed a conservatorship action involving Loleta in the Lafayette County Chancery Court. In the conserva-torship action, they alleged that Jimmy had severely limited family members’ access to Loleta either in person or by phone, and they demanded, among other things, that Jimmy “account for all expenditures using assets of Loleta Bard Wing whether held in trust, as a trustee or held individually from July 17, 2003[,] until present.” As part of the 2005 conservator-ship suit, Todd and Tammy issued subpoenas ' for numerous financial and medical records pertaining to Loleta, Jimmy, and the trust. The 2005 suit was voluntarily dismissed without prejudice on April 15, 2005.
¶ 4. Following the death of Loleta in November 2007, Jimmy prepared and submitted an accounting to Todd and Tammy of the residual trust assets.[3] Shortly thereafter, on February 21, 2008, Todd and Tammy filed the present action in the Lafayette County Chancery Court, alleging that Jimmy was in a confidential relationship with Loleta and had exercised undue influence over her, which prompted her to spend and/or transfer certain assets directly to Jimmy or for his benefit. Todd and Tammy further alleged that Jimmy, as a trustee, inappropriately spent funds or transferred assets to himself or for his benefit. Concurrent with their complaint, on February 21, 2008, Todd and Tammy filed a motion for a temporary restraining order seeking to freeze all assets of the trust. Following a hearing on February 26, 2008, the chancery court ordered all persons or entities holding assets of the trust to immediately freeze the accounts or property. Just as in the 2005 suit, in the present suit, Todd and Tammy issued numerous subpoenas to financial and medical institutions associated with Loleta, Jimmy, and the trust. Jimmy filed his answer to Todd and Tammy’s complaint on March 5, 2008.
¶ 5. On May 5, 2008, the parties entered into an “Agreed Order of Preliminary Injunction” in which Jimmy agreed to provide Todd and Tammy with a detailed accounting.[4] Jimmy asserts that he submitted the accounting to Todd and Tammy prior to June 2008. On July 1, 2008, Todd and Tammy filed a motion to compel, which asked the court to enter an order compelling Jimmy’s discovery responses and accounting. Following a hearing, an August 27, 2008 order was entered by the court that required Jimmy to fully and completely respond to all discovery previously propounded upon him.
¶ 6. On November 12, 2008, Jimmy filed a motion for summary judgment. In re *712 sponse, Todd and Tammy filed a second “renewed” motion to compel on November 20, 2008, asking the court to enter an order compelling Jimmy’s complete, accurate, and non-evasive discovery responses and accounting. Todd and Tammy also filed a response to Jimmy’s motion for summary judgment, in which they asked the court to dismiss the motion in its entirety and to award them reasonable expenses and attorney’s fees. On June 11, 2009, the parties presented arguments to the chancery court on their respective motions. Arguing their motion to compel, Todd and Tammy attempted to offer the testimony of Eddie Aune, an accountant, to elaborate on how Aune had examined the accounting provided and to explain that further information may be required. The chancery court, however, found that Todd and Tammy sought to present Aune’s testimony that had yet to be disclosed to Jimmy, and the court ordered Todd and Tammy to have Aune cooperate with Jimmy to address and resolve any alleged deficiencies with his accounting. Four days later, on June 15, 2009, Aune sent Jimmy’s counsel an email with attached files regarding the missing documents and incomplete information in the accounting of Loleta’s trust. Jimmy contends that this was the last time that he heard from Todd and Tammy regarding this matter until December 2010 — almost eighteen months later. On September 30, 2009, Todd and Tammy filed a “Motion for Summary Judgment [a]s to Liability Only,” but as acknowledged by Todd and Tammy in their appellate brief, the motion was never ruled upon by the chancery court.[5]
¶ 7. On December 13, 2010, counsel for Todd and Tammy emailed Jimmy’s counsel indicating that information was still missing from.Jimmy’s court-ordered accounting. Additionally, Todd and Tammy’s counsel emailed Jimmy on December 17, 2010, with proposed trial dates in June 2011. Jimmy responded by notifying Todd and Tammy of his intentions to file a motion to dismiss.
¶ 8. On December 21, 2010, Jimmy filed his motion to dismiss for lack of prosecution in the chancery court. On that same day, Todd and Tammy filed another motion to compel, again alleging incomplete information regarding the accounting. Jimmy alleges that after he filed the motion to dismiss, Todd and Tammy quickly responded by filing various motions, notices of depositions, and subpoenas in an effort to appear diligent. A hearing commenced on March 23, 2011, when counsel for both sides presented arguments to the chancery court on Jimmy’s motion to dismiss and Todd and Tammy’s motion to compel. On May 5, 2011, the chancery court issued an order dismissing Todd and Tammy’s case with prejudice for failure to prosecute. In its order, the chancery court concluded that the Todd and Tammy offered “[n]o excuse for delay,” that “the record substantially supported] a finding of dilatory conduct on the part of the plaintiffs,” and that the particular facts surrounding the case “clearly evidence[d] inexcusable and, thus, unreasonable delay.” The chancery court subsequently entered a “Final Order of Dismissal.”
¶ 9. Todd and Tammy now appeal.
*713 DISCUSSION
Whether the Chancery Court Abused Its Discretion in Granting Jimmy’s Motion to Dismiss Pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure.
¶ 10. Todd and Tammy argue that the chancery court abused its discretion by dismissing their case with prejudice, and in support of their argument, they claim the following: (1) the delay was largely attributable to Jimmy’s refusal to complete the court-ordered accounting, which had been pending for several years; (2) Jimmy was allowed to frustrate their proactive efforts to advance the litigation and set the matter for trial; (3) they were active and diligent in requesting tens of thousands of documents through subpoena and discovery; (4) they had to file three motions to compel information from Jimmy yet had no such motions filed against them; (5) the period of inactivity reflected in the chancery court’s docket was largely attributable to Jimmy’s failure to participate in the litigation as well as their efforts to consult with a handwriting expert and geriatric psychologist (although neither action is reflected in the record); and (6) the chancery court made several important factual mistakes in analyzing the happenings of the case.[6] Todd and Tammy further assert that the chancery court failed to adequately consider lesser sanctions, and that no aggravating factors existed indicating that a dismissal with prejudice would best serve the interests of justice.
¶ 11. Rule 41(b) permits a defendant to move for the dismissal of an action for the plaintiffs failure to prosecute. “The power to dismiss for failure to prosecute is granted not only by Rule 41(b), but is part of a trial court’s inherent authority and is necessary for ‘the orderly expedition of justice and the court’s control of its own docket.’ ” Cox v. Cox, 976 So.2d 869, 874 (¶ 13) (Miss.2008) (quoting Am. Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 180 (¶ 11) (Miss.1998)). “What constitutes failure to prosecute is considered on a case-by-case basis.” Id. at 874 (¶ 14). In AT & T, the Mississippi Supreme Court
set forth considerations to be weighed in determining whether to affirm a dismissal with prejudice under Rule 41(b): (1) whether there was a “a clear record of delay or contumacious conduct by the plaintiff’; (2) whether lesser sanctions may have better served the interests of justice; and (3) the existence of other “aggravating factors.”
Id. (quoting AT & T, 720 So.2d at 181 (¶ 13))-
¶ 12. This Court employs an abuse-of-discretion standard of review when considering a Rule 41(b) dismissal. Dine v. Anchor Lake Prop. Owners Ass’n, 911 So.2d 1001, 1003 (¶ 8) (Miss.Ct.App.2005). “The decision of the trial court judge, in this case the chancellor, will not be overturned unless there has been manifest error.” Id.

A. Delay

¶ 13. “[FJactors other than delay typically are present when a dismissal with prejudice under Rule 41(b) is upheld.” Cox, 976 So.2d at 874 (¶ 16). “Neverthe *714 less, factors other than delay are not required.” Id. at 875 (¶ 17). The standard employed by courts is whether “a clear record of delay or contumacious conduct by the plaintiff’ exists. Id. While aggravating factors serve to “bolster” a case for dismissal, they are not required. Id.
¶ 14. The record reflects substantial evidence of a clear record of inexcusable delay by Todd and Tammy. Before Jimmy filed his motion to dismiss on December 21, 2010, no action of record had taken place for almost an entire year. Todd and Tammy’s first action of record in practically a full year came only after Jimmy filed his motion to dismiss. The record supports the chancery court’s assessment that Todd and Tammy’s filing of the third motion to compel was clearly reactionary to Jimmy’s motion to dismiss, as they did not file the motion to compel until after Jimmy notified them of his intention to file the motion to dismiss. Precedent establishes that it is not what occurs after a plaintiff is made aware that his or her case may be dismissed for failure to prosecute that is dispositive of a motion to dismiss; instead, it is whether the case presents a clear record of delay due to a plaintiffs failure to prosecute before the case actually is subject to dismissal. See M.R.C.P. 41(b). See Hillman v. Weatherly, 14 So.3d 721, 728 (¶ 22) (Miss.2009) (In affirming a circuit court’s dismissal of a complaint with prejudice for failure to prosecute, the supreme court held that the test for determining whether a plaintiffs conduct is dilatory focuses “on the plaintiffs conduct, not on the defendant’s efforts to prod a dilatory plaintiff into action.”).[7] Furthermore, we recognize that it was Todd and Tammy’s responsibility as the plaintiffs to prosecute their case, not the defendant’s nor the chancery court’s. See Cox, 976 So.2d at 880 (¶ 50) (citing M.R.C.P. 41(b)). The chancery court, taking these considerations into account, found that Todd and Tammy’s dilatory conduct before Jimmy’s motion to dismiss was filed supported dismissal. We find that the record supports this conclusion. Thus, we conclude that the chancery court did not abuse its discretion in finding that a clear record of delay existed in this case.

B. Lesser Sanctions

¶ 15. Having established that the record supports the chancery court’s finding of a clear record of delay, we must next decide whether the chancery court erred in considering lesser sanctions. In determining whether the chancery court abused its discretion by dismissing a case pursuant to Rule 41(b), we “must consider whether lesser sanctions would better serve the interests of justice.” Cox, 976 So.2d at 876 (¶ 24). “Lesser sanctions include ‘fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.’ ” Id. To review whether the chancery court erred in his consideration of lesser sanctions, we must turn to the record and the chancery court’s findings.
¶ 16. In this case, the chancery court’s order of dismissal shows that lesser sanctions were considered but rejected:
The [cjourt appreciates that dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissal with prejudice [is] reserved for the most egregious cases. This [cjourt *715 has rarely granted such relief but believes that this case so warrants.
[[Image here]]
Finally, the [c]ourt is of the opinion and belief that a lesser sanction would not better serve the interests of justice. Here, the defendant has faced similar allegations since 2005. Plaintiffs had an opportunity to litigate these damning allegations in 2005, while Ms. Wing [was] alive. Yet when faced with evidence contrary to their position, they chose to dismiss their claims and, in effect, wait until Ms. Wing was no longer available before they brought their claim. Plaintiffs have then done precious little over the years the present action has been pending. Defendant is not responsible for prosecuting plaintiffs’ claims. Yet he has suffered the expense of a defense. At some point in time, defendant should be free from the clouds of suspicion, innuendos[,] and expense attendant to this litigation. This time is now. The [c]ourt does not believe fines, costs, [or] damages against plaintiffs or their counsel, or explicit warnings are suitable remedies. Given all that occurred, better yet, has not occurred, dismissal is an appropriate remedy in the [c]ourt’s opinion and discretion.
Todd and Tammy failed to present any evidence showing that the chancery court abused its discretion when it considered imposing lesser sanctions but conclusively found that lesser sanctions would not better serve the interests of justice. Accordingly, we find no abuse of discretion in the chancery court’s determination that lesser sanctions would not serve the interests of justice. See id.

C. Aggravating Factors

¶ 17. Todd and Tammy contend that no aggravating factors are present in this case. “ Aggravating factors’ include ‘the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct.’ ” Id. at (¶ 27) (quoting AT & T, 720 So.2d at 181 (¶ 13)). “While ‘aggravating factors’ are not required, the presence of such factors strengthens the case for dismissal under Rule 41(b).” Id.; see also Hine, 911 So.2d at 1006 (¶ 22) (“The presence of aggravating factors is not necessary to sustain a dismissal under Rule 41(b). However, aggravating factors clearly bolster the dismissal of a case and have often been present in affirmed dismissals.”).

1. Prejudice

¶ 18. Todd and Tammy contend that Jimmy failed to present any evidence of actual prejudice. This case has been stale for almost an entire year. Todd and Tammy’s dilatory conduct resulted in an unreasonable delay, and the supreme court has held that “[prejudice may be presumed from unreasonable delay.” Cox, 976 So.2d at 879 (¶ 44).
¶ 19. Actual prejudice may arise when, because of the delay, witnesses become unavailable or the memories of witnesses fade. Id. at 876-79 (¶¶ 27-45).[8] While Todd and Tammy assert that Jimmy failed to offer proof of any prejudice, we find that the delay alone may result in presumed prejudice to Jimmy, the defendant. See id. As noted by the chancery court, such lengthy and protracted litiga *716 tion creates issues with the evidence and witnesses’ memories:
Here, plaintiffs will attempt to show that Ms. Wing’s mental capacity was so impaired that she lacked sound judgment and testamentary intent. Such evidence is often circumstantial in nature and will depend in part on the recollection of sitters, bank personnel[,] and others who may interact with Ms. Wing on a daily basis. It is naive to assume that their memories have not failed in the many years (from 2003) that plaintiffs[’] claims are relevant.
The record reflects that after Todd and Tammy filed a conservatorship action regarding Loleta in 2005, they voluntarily dismissed the suit in April 2005 at a time when Loleta was still alive. Todd and Tammy then filed the present action in 2008, after Loleta had died in 2007. Todd and Tammy then allowed the case to languish as memories continued to fade. As such, we find that this presumed prejudice strengthens the case for dismissal under Rule 41(b).

2. Aggravating Factors

¶ 20. The presence of an aggravating factor may serve to bolster the case for a dismissal; however, it is not a requirement. Id. at 876 (¶ 27) (citing Am. Tel. & Tel., 720 So.2d at 181 (¶ 13)). As stated, the aggravating factors include: (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay; (2) the degree of actual prejudice to the defendant; and (3) whether the delay was the result of intentional conduct. Id. We do not find any aggravating factors in this case.[9]
CONCLUSION
¶ 21. We find no abuse of discretion in the chancery court’s decision to dismiss Todd and Tammy’s case with prejudice.[10] We therefore affirm the chancery court’s decision.
¶ 22. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. ROBERTS, J., NOT PARTICIPATING.

. Todd and Tammy are Loleta’s grandchildren. Todd and Tammy’s father, Terry Lee *711 Wing, predeceased Loleta.

. The plaintiffs in the 2005 conservatorship suit were Sue Broussard, Jack Bard, Barbara Cohen, Gene Bard, Gladys Brown, Mary Ga-bler, Bemita Hopkins, Frankie Pulhamus, Todd Wing, Judy Wing, Jan Gibson Miller, and Tammy Wing Kinney.

. Jimmy, Todd, and Tammy were the remaining beneficiaries of Loleta's trust at the time of Loleta's death.

. Specifically, the agreed order stated, in part, as follows:
Jimmy R. Wing shall provide an accounting of all trust transactions, activities, assets, income, debits, etc. of the Loleta B. Wing Trust from July 17, 2005, the point which he became a Co-Trustee, to the present. In addition, Jimmy Wing shall provide such an accounting for the period [of] January 1, 1999[,] to July 16, 2005[,] and shall make such requests as necessary to gather as much information about such period as reasonably necessary to produce such an accounting.

. Todd and Tammy also filed several subpoenas and notices of depositions from June 15, 2009, to January 7, 2010. A notice to take Jimmy’s deposition on January 7, 2010, was filed on October 26, 2009, and a re-notice of the deposition of Dr. Cooper McIntosh for January 28, 2010, was filed on November 3, 2009. The final act of record, prior to the filing of Jimmy’s motion to dismiss, was Todd and Tammy’s filing of a subpoena to Graceland Care Center on January 7, 2010.

. Todd and Tammy argue that the chancery court's opinion was based on incorrect facts. Specifically, they allege that the chancery court incorrectly found that: the present case was the 2005 suit repackaged; Jimmy responded to the court's instruction to complete the accounting; the motion was undisputed; Jimmy’s deposition occurred in October 2009, rather than in January 2010; and the motion to compel was filed in response to the motion to dismiss. Todd and Tammy further contend that the chancery court erred in calculating the delay.

. See also Holder v. Orange Grove Med. Specialties, P.A., 54 So.3d 192, 198 (¶ 22) (Miss.2010) (“We also may consider whether the plaintiffs' activity was reactionary to the defendants’ motion to dismiss, or whether the activity was an effort to proceed in the litigation.”).

. See also Holder v. Orange Grove Med. Specialties, P.A., 54 So.3d 192, 200-201 (¶¶31-34) (Miss.2010) (affirming the circuit court's dismissal of the case with prejudice and stating that "[d]espite the defendant's failure to present evidence of witnesses’ fading memories, we find that the delay alone may result in presumed prejudice to the defendant.”).

. See, e.g., Holder, 54 So.3d at 200 (¶ 31).

. See Hine, 911 So.2d at 1003 (¶ 8).